# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JAMES A. STAFFARONI, JR.,**

      **Plaintiff,**

      v.                                                     Case No. 10-C-1028

**MICHAEL J. ASTRUE**

      **Defendant.**

## DECISION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

**I. PROCEDURAL HISTORY**

James A Staffaroni ("Staffaroni") filed applications for SSI and SSDI disability coverage on December 4, 2006, claiming that on January 25, 2005, while working as a furniture mover, he was struck in the head with a roll of carpet, causing permanent injuries to his neck and back.

Staffaroni's application was denied initially and upon reconsideration (Tr. 59, 68). On July 14, 2009, a hearing was held before an Administrative Law Judge ("ALJ"), at which Staffaroni, represented by counsel, and a vocational expert ("VE") testified (Tr. 31-56). On September 29, 2009, the ALJ issued a decision holding that Staffaroni was not disabled because he had engaged in Substantial Gainful Activity ("SGA") after the onset of his symptoms, and because he retained the Residual Functional Capacity ("RFC") to perform a significant number of jobs in the national economy (Tr. 10-22). On September 22, 2010, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Staffaroni's request for review (Tr. 1).

On November 18, 2010, Staffaroni filed this present action for judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g). The matter was originally assigned to the Honorable Lynn Adelman, and was transferred to this court upon all parties consenting to the full jurisdiction of a magistrate judge. Briefing in this matter closed on May 31, 2011, and this matter is now ready for resolution.

## II. FACTUAL SUMMARY

### A. Medical Evidence

In February, 2005, X-rays and MRI's of Staffaroni's back and neck showed mild to moderate degenerative changes and a moderately large central disc herniation in Staffaroni's cervical spine. In May, 2005, Dr. Thomas Perlewitz performed surgery on Staffaroni's neck, which included a spinal fusion (Tr. 294). Post-surgical examinations of Staffaroni were essentially normal, save for a slightly decreased range of neck motion (Tr. 202).

In September, 2005, Staffaroni saw Dr. Sridhar Vasudevan, a Physical Medicine Rehab specialist, complaining of increased low back pain and constant stiffness and pain in his upper back (Tr. 356). Dr. Vasudevan recommended that Staffaroni undergo a "work hardening" program of pain management and physical therapy (Tr. 297). Dr. Vasudevan also recommended that Staffaroni visit Dr. Brad Grunert, Ph.D. for a psychological evaluation.

Staffaroni saw Dr. Grunert, who diagnosed Stafforoni as having "an adjustment reaction secondary to a medical condition," and opined that Stafforoni would benefit from a "short course of treatment" aimed at teaching him coping, relaxation and stress management skills (Tr. 207). Dr. Grunert saw Stafforoni weekly through October 3, 2005, at which point he made a diagnosis of "continued…psychological factors affecting physical condition," (Tr. 208).

In November, 2005, following Staffaroni's completion of the "work hardening" program, Dr. Vasudevan determined that Staffaroni had reached the end of healing and had sustained a

2

permanent 22% disability that would permanently restrict him to work entailing lifting no more than 10 pounds frequently; carrying 20 pounds; and a floor to waist lifting maximum of 25 pounds. Dr. Vasudevan instructed Staffaroni to avoid "continuous neck flexion, repeated neck extension, and rotation activities", as well as "excessive bending, stooping, [and] reaching with his lumbosacral spine" (Tr. 313). Dr. Perlewitz reviewed the findings of Dr. Vasudevan and "deferred" to Dr. Vasudevan as to Staffaroni's return to work, end of healing, and partial permanent disability (Tr. 357).

In March, 2007, Dr. Donna Davidoff performed a Social Security disability evaluation on Staffaroni. Dr. Davidoff's examination of Staffaroni's upper extremities revealed "normal" to "good" strength, range of motion, sensation, and reflexes (Tr. 501). An examination of Staffaroni's lower extremities yielded similar results (Tr. 501). Dr. Davidoff diagnosed Staffaroni with a "history of cervical fusion…with persistent pain, a history of lumbar spine pathology, and Chronic Pain Syndrome" (Tr. 501).

In April, 2007, at the request of the SSA, Dr. Michael Baumblatt reviewed Staffaroni's medical records and prepared a Residual Functional Capacity ("RFC") assessment. Based on this review, Dr. Baumblatt opined that Staffaroni could lift and carry ten pounds occasionally; less than ten pounds frequently; and that he could stand and walk for at least two hours and sit six hours in an eight hour day (Tr. 504). In August, 2007, a subsequent RFC assessment reported findings similar to those of Dr. Baumblatt (Tr. 535).

The August, 2007 assessment also included a psychiatric review component conducted by Michael Mandli, Ph.D. (Tr. 542-554). Dr. Mandli determined that Staffaroni suffered from a non-severe mental impairment as a result of an adjustment reaction secondary to a medical condition, and that Staffaroni's mental impairment did not pose more than a mild function limitation on Staffaroni's activities (Tr. 552).

3

In May, 2009, Staffaroni began complaining of a myriad of new afflictions, including fatigue, shortness of breath, chest pain, and a "jittery" feeling (Tr. 590). These symptoms prompted Staffaroni to go to the emergency room 6 times through June, 2009. Several tests were performed on Staffaroni in an attempt to discern the cause of his symptoms, including a heart catheterization, carotid artery study, stress test, ultrasound of the heart, CT scan, and a thyroid functioning test. All came back negative for any abnormalities (Tr. 601). Staffaroni also underwent an MRI of his neck and brain, which revealed postsurgical changes consistent with spinal fusion and mild degenerative disc disease (Tr. 556)

### B. Plaintiff's Testimony

Starting in January, 2005, Staffaroni complained of severe neck pain and back pain that restricted him in nearly all facets of his life. In a March, 2007 visit to Dr. Davidoff, Staffaroni stated that he had done "terribly" since his surgery in 2005 (Tr. 19). On a September, 2007 SSA Disability Report, Staffaroni claimed to be experiencing difficulty performing even rudimentary tasks such as getting dressed, doing housework, and sitting, standing or walking for more than 15 minutes (Tr. 188). He also stated that due to being in "constant pain", he typically got no more than 3 hours per night of sporadic sleep (Tr. 188). On the same report, Staffaroni stated that he had recently become depressed and that he had "no drive to do anything" (Tr. 185). In May, 2009, Staffaroni began complaining of chest tightness, shortness of breath, and a general feeling of anxiety that caused him to be "physically sick" and "completely drained" (Tr. 47). These symptoms prompted several visits to the emergency room (Tr. 595-609). Later, after numerous test showed no apparent physical cause of Staffaroni's symptoms, Staffaroni stated that the physicians determined his symptoms were related to anxiety and stress, for which they prescribed medication (Tr. 47).

Despite the debilitating symptoms described by Staffaroni, he was able to obtain employment at several points after his alleged onset of symptoms. In the July 14, 2009 hearing

4

before the ALJ, Staffaroni stated that he had last worked in June, 2009 for Dura-Clean, a fire and water restoration company owned by his brother-in-law (Tr. 43, 46). His job was that of a supervisor, which entailed meeting with housing inspectors, supervising sub-contractors, and communicating with customers (Tr. 45). Although his job at Dura-Clean technically required that he work 40 hours per week, Staffaroni typically worked 30 hours per week, reaching 40 hours only a "very few" times (Tr. 43). The owners of Dura-Clean were aware of Staffaroni's back problems, and were willing to make accommodations for him, including a reduced workload when necessary (Tr. 42, 43). A new hire report showed that Dura-Clean paid Staffaroni $5,408 in the 4th quarter of 2008 and $5,651 in the first quarter of 2009 (Tr. 13). Staffaroni remained employed at Dura-Clean until June 6, 2009, at which point he left Dura-Clean of his own volition because he felt it was not "fair" for him to be missing so much work due to his frequent visits to the hospital in May and June, 2009 (Tr. 47).

Throughout most of 2007, Staffaroni worked as a meter reader for the mobile home community in which he lived. This job entailed spending approximately one hour per day walking around the park taking multiple water meter readings (Tr. 12-13).

From January 1, 2006 to July 6, 2006, Staffaroni worked 30 hours per week as a superintendent at Florida Gulf Coast Homes in Florida (Tr. 12). Staffaroni stated on a disability questionnaire that he left Florida Gulf Coast Homes because his job had been eliminated, and because the replacement job offered to him by his employer required physical exertion beyond that allowed by his restrictions per Dr. Vasudevan (Tr. 162). At the hearing before the ALJ, Staffaroni's counsel characterized Staffaroni's departure from Florida Gulf Coast Homes as a "mutual parting of the ways" (Tr. 36).

### C. Vocational Expert Testimony

A Vocational Expert ("VE"), testified at Staffaroni's hearing before the ALJ. The VE detailed Staffaroni's work history, including his work in 2008-2009 as a supervisor of fire and restoration crews at Dura-Clean and in 2006 as a supervisor of carpenters at Florida Gulf Coat Homes. The VE stated that both of these jobs would require a "medium" level of physical exertion as defined by the SSA (Tr. 49). The VE stated that these jobs would be considered Substantial Gainful Activity ("SGA") under the standard set forth by the SSA (Tr. 50).

The ALJ asked the VE a series of questions as to the employability of a hypothetical person of Staffaroni's age, education and work experience who was limited to "sedentary" work as defined by the SSA (Tr. 51, 52). The VE stated that there were several jobs that existed in significant numbers in the region for which such a person would be qualified, including phone quote clerk, charge account clerk, and surveillance systems monitor (Tr. 52). The ALJ then added certain additional limitations to his hypothetical worker, including only occasional stooping and overhead reaching and a requirement that the hypothetical worker be able to sit or stand at will. The VE stated that these restrictions would limit the person's options, but not preclude such a person from finding employment in any of the jobs listed above (Tr. 52, 53). The ALJ then added the additional restriction that the hypothetical worker in question not be able to repetitively rotate or extend his neck. The VE stated that with these additional restrictions, the worker in question would not be able to perform any of the jobs listed above (Tr. 54).

Bearing in mind the most expansive list of restrictions above, the ALJ then asked the VE whether a person with such restrictions who was incapable of engaging in sustained work activity on a regular and continuing basis for eight hours per day, five days per week would be precluded from competitive work at all exertional levels. The VE answered that he would (Tr. 54).

**D. Decision of the ALJ**

In a decision dated September 29, 2009, the ALJ denied Staffaroni's appeal on the grounds that, though he did suffer from a severe impairment, Staffaroni was not "disabled" at any time from the alleged onset date through his date last insured (20 CFR § 404.1520(g)) (Tr. 22).

A review of the briefs in this case and of the ALJ's decision reveals some apparent confusion as to Staffaroni's "Date Last Insured". In his original claim, Staffaroni listed December 31, 2006 as his date last insured. At the hearing before the ALJ, colloquy between the ALJ and Staffaroni's counsel indicates a general agreement that Staffaroni's actual date last insured was September 30, 2008 (Tr. 37). In the ALJ's decision, reference is made to a date last insured of *both* September 30, 2006 and September 30, 2009 (Tr. 10, 12, 22). Since the record shows that Staffaroni was not disabled at any point pertinent to this inquiry, the question of his actual date last insured is not material to this decision. The court notes for the record, however, that it is critically important that the ALJ correctly identify the Date Last Insured, as it is possible that given a different fact pattern, an incorrect or unclear determination of a claimant's date last insured would be grounds for a remand.

**III. STANDARD OF REVIEW: SUBSTANTIAL EVIDENCE**

In addressing the issues raised by the Staffaroni, the court is limited to determining whether the ALJ's factual findings are supported by "substantial evidence." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The court may not re-weigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute its own judgment for that of the Commissioner. *Id.*; *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

The substantial evidence burden is satisfied when the evidence is such that a reasonable mind might accept it as adequate to support a conclusion. *Williams v. Apfel*, 179 F.3d 1066, 1071 (7th Cir. 1999). Although a mere scintilla of proof will not suffice, *Butera v Apfel*, 173 F.3d 1049,

1055 (7th Cir. 1999), substantial evidence may be something less than the greater weight or preponderance of the evidence, *Young v Sullivan*, 957 F.2d 386, 388 (7th Cir. 1992). If the ALJ rejects uncontradicted evidence, reasoning for that rejection must be clearly articulated. *Id.*; *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's decision rests on the credibility determination, this court will overturn that determination only if it is patently wrong. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Special deference is appropriate because the ALJ is in the best position to see and hear the witness and to determine credibility. *Id*. at 435.

When the Commissioner denies Social Security benefits, the ALJ is required to "build an accurate and logical bridge from the evidence to [his] conclusions" so that a reviewing court may afford the claimant meaningful review of his "ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (citing *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Further, the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." *Steele*, 290 F.3d at 940. Finally, if the ALJ committed an error of law, this court may reverse the Commissioner's decision, regardless of whether it is supported by substantial evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).

Simply stated, this court's role is not to look at all the evidence again and make an independent determination of whether the claimant is disabled. This court's role is very limited. If the ALJ complied with the rules and regulations, and if the decision is supported by substantial evidence, the court must affirm the decision of the ALJ, despite the claimant's strong disagreement.

## IV. DETERMINING DISABILITY: A FIVE-STEP ANALYSIS

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

In determining whether the claimant was disabled, the ALJ applied the following five step inquiry: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment equates to one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appx. 1 ("Appendix 1"); (4) whether the claimant is unable to perform past relevant work; and (5) whether the claimant is incapable of performing work in the national economy. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point other than step 3 ends the inquiry and leads to a determination that the claimant is not disabled. *Zurowski v. Halter*, 245 F.3d 881, 885-886 (7th Cir. 2001( (citing *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)). The claimant bears the burden of proof in the first four steps. *Young v. Secretary of Health and Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). If the claimant sustains that burden, at Step 5, the burden shifts to the Commissioner. *Id*. The ALJ is required to carefully consider and explain in his decision the weight given to state agency doctors and consultants. SSR 96-6p.

## V. ANALYSIS

Staffaroni contends that the ALJ erred in three broad aspects of his decision by a) incorrectly concluding that Staffaroni was engaged in SGA in 2008 and 2009; b) erring in his analysis of Staffaroni's Residual Functional Capacity ("RFC") by failing to comply with SSR 96-2 (medical opinions of treating physicians are entitled to controlling weight), SSR 96-7 (credibility of claimant's complaint relative to objective medical evidence), and SSR 96-8 (requirement to engage in a "function-by-function" assessment of a claimant's exertional capacity); and c) failing to meet his burden at Step 5. Staffaroni also offers a conclusory challenge to the ALJ's analysis of his mental impairments. The court will address each of Staffaroni's contentions below.

### A. Substantial Gainful Activity

The ALJ concluded at step one of the five-step inquiry that Staffaroni had engaged in SGA by working as a supervisor at Florida Gulf Coast Homes from January 1, 2006 to July 6, 2006, and by working as a supervisor at Dura-Clean from December 1, 2008 to June 6, 2009 (Tr. 12-13). Staffaroni argues that the ALJ was incorrect in concluding that he engaged in SGA from December 1, 2008 to June 6, 2009. The Commissioner argues that by failing to adequately develop his argument that his post-onset work was not SGA, Staffaroni waived the right to challenge the ALJ's step-one finding.

Whether or not Staffaroni preserved the right to appeal the ALJ's step one decision, his perfunctory challenge does not merit a reversal of the ALJ's finding. In support of his contention that his work activity in 2008-2009 was not SGA, Staffaroni argues that "the evidence of record shows that that [he] was not engaged in <u>substantial</u> work activity during this time". At the hearing before the ALJ, Staffaroni's counsel described Staffaroni's 2006 and 2008-2009 work as "unsuccessful work attempts", but failed to set forth a standard under which Staffaroni's post-onset work could be so described (Tr. 34). No further evidence is presented to support Staffaroni's claim that his work in 2006, 2008 and 2009 was not SGA.

At step one, the burden is on the claimant to show that he was not engaged in SGA that would preclude a finding of disability. *Young v. Secretary of Health and Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). Based on the cursory argument set forth by the plaintiff, and on substantial evidence in the record, the ALJ reasonably concluded that Staffaroni's work in 2006 and 2008-2009 constituted SGA. The ALJ noted in his ruling that the nature of the activities performed by Staffaroni, as well as the amount of money he earned at each job, dictated a finding of SGA (Tr. 12, 13) (C.F.R. § 404.1572) (C.F.R. § 404.1574(b)(2)). None of the facts relied upon by the ALJ to reach this conclusion were contested by Staffaroni. The testimony of the VE also supported the

ALJ's finding that Staffaroni engaged in SGA during his time at Florida Gulf Coast Homes and Dura-Clean (Tr. 49). Because Staffaroni failed to set forth sufficient evidence showing that his post-onset work was not SGA, this court finds that the ALJ reasonably determined that Staffaroni's work in 2006, 2008 and 2009 constituted SGA.

Staffaroni's cursory claim that his post-onset employment constituted "unsuccessful work attempts" (also referred to as "trial work periods") that would not preclude a claimant from receiving disability benefits also fails (Tr. 55, 56). If a claimant performs SGA within 12 months of the alleged onset of impairment, if SGA continues for more than 6 months, or if the claimant performs over 9 months of SGA within a 60 month period following onset of symptoms, he cannot classify such work as a trial work period (C.F.R. § 404.1592(d)(2)(iii); C.F.R § 404.1574(c)(5); C.F.R § 404.1592(e)(2)) (*see Barnhart v. Walton,* 122 S.Ct. 1265 (2002) (claimant is not entitled to a trial work period if he engages in SGA within 12 months of onset and before a finding of disability). Because Staffaroni engaged in SGA prior to the expiration of 12 months after his alleged onset of symptoms, because each instance of SGA lasted longer than 6 months, and because the total amount of SGA exceeded 9 months in a 60 month span, none of Staffaroni's post-onset SGA qualifies as "trial work" or an "unsuccessful work attempt".

Based on the above, the ALJ would have been justified in ending his inquiry into Staffaroni's eligibility for SSI and SSDI benefits at step 1 of the five-step inquiry with a finding that Staffaroni's post-onset SGA showed that he was not disabled at any point pertinent to this inquiry. However, the ALJ chose to continue on through the remaining four steps of the five-step analysis. This court will therefore do the same.

### B. Residual Functional Capacity

The ALJ determined that despite his severe impairments, Staffaroni retained the RFC to perform sedentary work, provided such work involved only occasional stooping and overhead

reaching, and provided Staffaroni was able to sit and stand alternately at will (Tr. 16) (20 C.F.R. § 404.1567(a). Staffaroni contends that, in so finding, the ALJ committed reversible error by failing to give controlling weight to the medical opinions of Staffaroni's treating physicians as required by SSR 96-2, by failing to engage in a "function-by-function" assessment of Staffaroni's exertional capacity as required by SSR 96-8, and by incorrectly assessing the credibility of Staffaroni's testimony as to the intensity, persistence, and limiting effects of his symptoms as required by SSR 96-7p. The court will address each of these arguments below.

### i. Opinion of Treating Physician

Staffaroni argues that the ALJ committed reversible error in his RFC analysis by relying on the medical opinions of non-examining physicians hired by the SSA instead of the opinions of Staffaroni's treating physicians in violation of SSR 96-2p (Tr. 19, 20) (see *Punzio v. Astrue*, 630 F.3d 704 (7th Cir. 2011). (The ALJ must give "controlling weight" to a treating source's opinion . . . [when] it is not inconsistent with other substantial evidence). Staffaroni contends that had the ALJ given controlling weight to the opinions of his treating physicians, the evidence would not have supported the ALJ's finding that Staffaroni retained the RFC for sedentary work.

A review of the record in this case does not support Staffaroni's contention that the ALJ's reliance on the findings of non-examining physicians over examining physicians was improper. An ALJ is required to give controlling weight to a treating source's opinion if it is "well supported . . . and not inconsistent with other substantial evidence." *Id.* Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Powers v. Apfel,* 207 F.3d 431, 434 (7th Cir. 2000). If an ALJ rejects a treating source's opinion, a sound explanation must be given for that decision. *Punzio,* 630 F.3d at 704.

In this case, the ALJ concluded that the opinions of Staffaroni's treating physicians, particularly that of Dr. Perlewitz who stated that Staffaroni was "unable to return to work" on

multiple worker's compensation insurance forms, were inconsistent with Staffaroni's post-onset work history at "medium" levels of exertion (Tr. 20, 49). Even so, in an effort to give Staffaroni "every benefit of the doubt", the ALJ chose to accord weight to the opinions of the non-examining physicians, who limited Staffaroni to "sedentary" work, rather than relying on the opinions of the treating physicians, who would have allowed Staffaroni to perform "light work" (Tr. 20) (20 C.F.R. § 404.1567(a), 20 C.F.R. § 404.1567(b)). Though the VE testified in response to a hypothetical question from the ALJ that the neck restrictions imposed by Dr. Vasudevan would preclude the hypothetical worker from performing sedentary work (Tr. 54), the VE also testified that Staffaroni had performed SGA with a "medium" exertion level as late as June, 2009 (Tr. 49). In light of this contradictory evidence, it was within the discretion of the ALJ to conclude that the neck limitations imposed by Dr. Vasudevan were contradicted by substantial evidence in the form of Staffaroni's work history.

Therefore, the ALJ properly rejected the opinions of Staffaroni's treating physicians because, to the extent those findings precluded Staffaroni from working, they were contradicted by substantial evidence, not the least of which being Staffaroni's substantial history of "medium" SGA since the onset of his symptoms. It is the conclusion of this court that the ALJ did not commit reversible error by rejecting the opinions of Staffaroni's treating physicians in concluding that Staffaroni retained the capacity for "sedentary" work subject to certain limitations.

### ii. Function-by-Function Analysis

Staffaroni argues that the ALJ committed reversible error by failing to engage in a "function-by-function" assessment of Staffaroni's exertional capacity using the "seven strength demands" of sitting, standing, walking, lifting, carrying, pushing, and pulling contained in SSR 96-8p.

Though the ALJ did not engage in a point-by-point analysis of each of the seven strength demands, the ALJ satisfied the requirements of SSR 96-8p by analyzing the objective medical evidence, Staffaroni's testimony (and credibility), and other evidence in a narrative format addressing each of the seven strength demands (Tr. 16-20). *Knox v. Astrue,* 327 Fed.Appx. 652, 656 (7th Cir. 2009). In addition, the opinions of Drs. Baumblatt and Foster, relied upon by the ALJ, contained a "function-by-function" assessment of Staffaroni's capacity to perform each of the seven strength demands contained in SSR 96-8p (Tr. 504, 535). Because the ALJ engaged in a narrative discussion of Staffaroni's capabilities relative to the seven strength demands, and because the medical opinions relied upon by the ALJ expressly address each of the seven strength demands, it is the conclusion of this court that the ALJ properly considered the seven strength demands in his analysis of Staffaroni's residual functional capacity in accordance with SSR 96-8p.

### iii. Credibility Determination

Staffaroni argues that the ALJ's finding as to Staffaroni's credibility regarding the intensity, persistence, and limiting effects of his symptoms was patently wrong, and that therefore the ALJ's credibility finding should be overturned by this court pursuant to SSR 96-7p (Tr. 19)

SSR 96-7p requires that an ALJ's evaluation of a claimant's credibility include a careful evaluation of the "intensity, persistence and functionally limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities" *Larson v. Astrue,* 615 F.3d 744, 752 (7th Cir. 2010) (the ALJ must consider the individual's level of pain, treatment, daily activities, and other impairments, and must support the finding with specific reasons consistent with the record). Furthermore, an ALJ's evaluation of a claimant's credibility must contain "specific reasons" for the ALJ's finding, and "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicatory gave to the individual's statements and the reason for that weight." SSR 96-7p.

Though an ALJ "may not disregard subjective complaints merely because they are not fully supported by objective medical evidence," *Blom v. Barnhart,* 363 F. Supp. 2d 1041, 1051 (E.D. Wis. 2005) (quoting *Knight v. Chater,* 55 F.3d 309, 314 (7th Cir. 1995), a lack of objective medical evidence is certainly a relevant factor in an ALJ's credibility determination.

The evidence in this case is somewhat contradictory, and thus in arriving at his decision regarding Staffaroni's credibility, the ALJ was required to accept certain evidence while rejecting other evidence. Provided the ALJ complied with the appropriate regulations and supplied sufficient explanation for a decision to reject certain evidence, such a decision cannot be upset by this court *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003); *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). An ALJ's credibility determination will not be upset unless it is "patently wrong," *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) (citing *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003)), or "divorced from the facts contained in the record." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008).

In reaching his conclusion that Staffaroni's claims regarding the intensity, persistence, and limiting effects of his symptoms were not credible, the ALJ considered all of the facts in the record, including Staffaroni's subjective claims, evidence of Staffaroni's post-onset activity, and the objective medical evidence presented (Tr. 19). In his decision, the ALJ spent a significant amount of time contrasting Staffaroni's complaints of debilitating pain with details of his daily life, in particular his work history, and with medical reports that could be seen as contradicting these complaints (Tr. 16-20). The ALJ noted that at the same time that Staffaroni was complaining of symptoms so severe that he was having trouble dressing and undressing, forcing him to nap daily, he was performing substantial work, in some cases rising to the level of SGA (Tr. 17). Later, the ALJ notes that Staffaroni gave several different reasons for his departure from Florida Gulf Coast

Homes, ranging from a "mutual parting," to a change in job description, to the company having gone out of business (Tr. 18).

The ALJ noted a similar discrepancy in the reasons given at various points by Staffaroni for leaving Dura Clean (Tr. 18). The ALJ also cited a lack of medical evidence explaining Staffaroni's alleged neurological problems, noting in particular various examinations of Staffaroni's brain and cardiovascular system showing minimal abnormalities that would not be expected to cause the alleged symptoms (Tr. 18-19).

Having reviewed the ALJ's decision and the record in this matter, the court concludes that the ALJ's decision as to Staffaroni's credibility was not patently wrong, and therefore cannot be overturned by this court.

**C. Step Five**

Staffaroni argues that the ALJ failed to provide an adequate legal basis for his finding that there were jobs that existed in significant numbers in the regional economy that the claimant could have performed, and that the court should therefore reverse the ALJ's finding on this point (20 C.F.R. 404.1569 and 404.1569(a)).

At step five, the burden shifts to the Commissioner to prove that there are jobs that exist in significant numbers that could be performed by Staffaroni given his level of impairment. *Young v. Secretary of Health and Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). In making his determination as to this question, the ALJ relied primarily on the testimony of the VE, who stated that a significant number of jobs existed in the regional economy that could be performed by a hypothetical person of Staffaroni's age, education and experience who was limited to sedentary work as defined by 20 C.F.R. § 404.1567(a) (Tr. 52). The ALJ then added various restrictions to his hypothetical regarding stooping, overhead reaching, and a sit/stand option, which the VE indicated would reduce, but not eliminate, the jobs available for such a person (Tr. 53). The ALJ then added

neck restrictions generally mirroring those given by Dr. Vasudevan, which the VE indicated would preclude such a person from obtaining work in the regional economy (Tr. 54). Finally, the ALJ added a combination of physical and mental conditions preventing a person from working a 40 hour work week on a continuous basis. The VE indicated that these restrictions would also eliminate all job opportunities for such a person (Tr. 55).

As previously stated, the ALJ decided, based on substantial evidence, not to accord substantial weight to the opinion of Dr. Vasudevan, who recommended restrictions on Staffaroni's neck movement (Tr 20). The ALJ also noted a significant history of SGA, including 40 hour work weeks, at several points since the alleged onset of Staffaroni's symptoms (Tr. 20). In his RFC determination, therefore, the ALJ did not include the neck restrictions recommended by Dr. Vasudevan, nor did he include a restriction on the number of hours per week that Staffaroni could work (Tr. 16). Absent these restrictions, the testimony of the VE in response to the ALJ's hypothetical supports the ALJ's conclusion that a significant number of jobs existed in the regional economy that Staffaroni could have performed given his RFC as reasonably determined by the ALJ.

The ALJ's conclusion as to Staffaroni's RFC was based on substantial evidence and reasonable reliance on the testimony of the VE. Accordingly, this court affirms the step five finding of the ALJ.

### D. Mental Impairment

Finally, a brief word about Staffaroni's mental impairments. At the conclusion of his initial brief, Staffaroni asserts that the ALJ failed to properly evaluate his mental impairments as required by 20 C.F.R. § 404.1520(a). Staffaroni repeats this assertion in his reply brief, offering in support of his position the opinion of Dr. Grunert, who stated that Staffaroni suffered from "an adjustment reaction secondary to a medical condition" (Tr. 207).

As noted by the Commissioner in his brief in support of the ALJ's decision, nothing in the record supports a finding that Staffaroni suffered from a mental condition rendering him disabled under the Listing of Impairments in 20 C.F.R. § 404 Appendix 1. Even though Dr. Grunert in October, 2005, found that Staffaroni suffered from some level of mental impairment, he recommended only that Staffaroni undergo a "short course of treatment" aimed at teaching him coping, relaxation and stress management skills (Tr. 207). In contrast, the ALJ considered the opinion Dr. Mandli, who concluded that Staffaroni's mental impairment did not pose more than a minimal limitation on his ability to perform basic activities (Tr. 552). More importantly, Staffaroni's subsequent work history belies any contention of being limited by mental impairments.

Staffaroni's perfunctory assertion that the ALJ failed to properly evaluate his mental impairment is not supported by the facts in the record. It is therefore the conclusion of this court that the ALJ properly considered the evidence and the applicable law in determining that Staffaroni's non-severe mental impairment did not significantly limit his ability to engage in work in the region.

## VI. CONCLUSION

The ALJ's decision that Staffaroni retained the RFC for sedentary work with only occasional stooping and bilateral overhead reaching, provided he is able to sit and stand alternatively at will without being off task more than 10% of his work time, was supported by substantial evidence. Since the ALJ reached this decision in accordance with applicable law, it must be affirmed by the court.

The conclusion of the ALJ that the Staffaroni's post-onset employment in 2006, 2008 and 2009 was SGA was supported by substantial evidence in the record and consistent with applicable laws and regulations. Although various medical providers stated that Staffaroni was not able to return to work, or that he had physical impairments which would preclude him from obtaining

work, these conclusions were generally inconsistent with objective medical testing and Staffaroni's post-onset work history.

Though the ALJ did not engage in an explicit "function-by-function" assessment of Staffaroni's exertional capacity, the ALJ did engage in a narrative discussion of Staffaroni's capabilities relative to the seven strength demands contained in SSR 96-8. The medical opinions relied upon most heavily by the ALJ also engaged in a detailed analysis of each of the seven strength demands, therefore the ALJ complied with the requirements of SSR 96-8.

The ALJ determined that Staffaroni's testimony as to the severity and debilitating nature of his symptoms was not consistent with his history of activity and the objective medical evidence. The ALJ also pointed out several inconsistencies in Staffaroni's testimony regarding his employment history, therefore, consistent with SSR 96-7p, the ALJ found that Staffaroni's self-reported limitations were not credible.

The ALJ provided substantial evidence for his conclusion that significant numbers of jobs existed that Staffaroni could perform given his RFC, thus the ALJ's conclusion that Staffaroni remains capable of working is supported by substantial evidence based on the totality of the record.

Finally, the ALJ properly considered the record in concluding that Staffaroni was not suffering from a severe mental impairment that precluded him from working.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk shall enter judgment dismissing plaintiff's complaint and this action.

Dated at Milwaukee, Wisconsin, this 28th day of July, 2011.

s/AARON E. GOODSTEIN
United States Magistrate Judge